# THE UNITED STATES DISTRICT COURT

# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

UNITED STATES OF AMERICA     :

    v.                           :     **CRIMINAL NO. 20-00202-001**

ALEKSANDAR KAVAJA        :

## GOVERNMENT'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO REDUCE SENTENCE PURSUANT TO 18 U.S.C. § 3582(c)(1)(A)(i)

Defendant Aleksandar Kavaja seeks compassionate release under 18 U.S.C. § 3582(c)(1)(A)(i). This motion should be denied, given that the defendant has been vaccinated against COVID-19 and therefore does not present an extraordinary and compelling reason permitting relief, and otherwise does not present a medical condition that, according to CDC guidance, places him at enhanced risk during the current pandemic. In addition, the defendant continues to present a danger to the community, and has served only half of his sentence for conspiracy to possess with intent to distribute nearly 20 tons of cocaine. There is no basis for consideration for compassionate release.

## I.    Background.

### A.    Criminal Conduct.

On July 9, 2020, defendant Aleksandar Kavaja was charged in an Information with conspiracy to possess with intent to distribute five kilograms or more of cocaine on a vessel subject to the jurisdiction of the United States, in violation of 46 U.S.C. §§ 70506(b), 70503(a)(1), and 21 U.S.C. § 960(b)(1)(B). This charge stemmed from the

defendant's participation in a drug smuggling scheme onboard the Motor Vessel MSC Gayane beginning in or around early 2019 until on or about June 17, 2019, on the high seas, elsewhere, and in Philadelphia, Pennsylvania. The MSC Gayane is a large, commercial shipping vessel that holds thousands of shipping containers and transports cargo around the world. The vessel was operated by a captain and more than 20 crew members, and stopped at ports in South America, Central America, and the Caribbean before arriving in Philadelphia on June 17, 2019.

The defendant worked on board the MSC Gayane as the ship's electrician. The defendant, along with seven other crew members, was involved in smuggling bulk cocaine onto the ship, at the direction of other co-conspirators outside the ship. The defendant and three other crew members were each recruited into this bulk cocaine smuggling scheme in their home country, Montenegro, prior to boarding the vessel. While on the vessel, the defendant communicated with co-conspirators on land using a mobile "narco" phone to coordinate the bulk cocaine smuggling. Four crew members, including the defendant, operated the "narco" phone and recruited other crew members while at sea to assist in physically bringing the cocaine onto the vessel and stashing the cocaine in the vessel's shipping containers.

On multiple occasions during the MSC Gayane's voyage and while at sea, crew members helped load the bulk cocaine (packaged inside duffel bags) onto the vessel from speedboats that approached the vessel at night. Crew members used the vessel's crane to hoist cargo nets full of cocaine onto the vessel, and then stashed the cocaine in the vessel's shipping containers. Crew members bent railings on the ship and pulled back

doors on the shipping containers so they could fit the bags of cocaine into the containers. After hiding the cocaine among legitimate cargo, crew members, including the defendant, used fake seals to reseal the shipping containers in which they had stashed the cocaine. The defendant, along with the seven other crew members, was responsible for smuggling over 17,000 kilograms of cocaine, hidden in seven shipping containers, that was seized in this case.

The defendant pleaded guilty to the offense on September 10, 2020. This was the defendant's first criminal conviction. He was sentenced on February 23, 2021, to 88 months' imprisonment. The Court had information at the time of sentencing that the defendant had experienced migraines every three to four months since 2016 and self-medicated with marijuana. The Court was also fully aware at the time of the existence and impact of the COVID-19 pandemic.

The defendant is serving his sentence at FCI Berlin, with a minimum release date of September 16, 2025. He has served approximately 38 months and has credit for good conduct time of approximately six months, for total time served of approximately 44 months. He has not committed any disciplinary infraction during his time in custody. The defendant faces an immigration detainer upon release.

### B.   Request for Compassionate Release.

On June 19, 2022, Kavaja submitted a request to the warden for compassionate release, citing stress as a result of a crowded housing unit and the possibility of long-term health issues from contracting COVID-19. On June 27, 2022, the warden denied his request. On July 19, 2022, the defendant submitted a motion to this Court for

compassionate release. Thus, the government agrees that more than 30 days have passed since the defendant's request to the warden, and that he therefore has satisfied the administrative exhaustion requirement set forth in 18 U.S.C. § 3582(c)(1)(A).

The undersigned obtained the defendant's medical records for the past year from BOP, which are filed under seal as Exhibit A. The records reveal that the defendant, who is 29 years old, presents high blood pressure and suffers from chronic migraines. These conditions appear well-controlled at this time with medication provided by the institution. The defendant is fully ambulatory and engages in all normal activities of daily living (ADLs).

The defendant has been fully vaccinated against COVID-19. He received doses of the Moderna vaccine on August 30, 2021, and September 25, 2021. It does not appear as of this writing that the defendant has received a booster. If that is the case, he should promptly request one; boosters are available to BOP inmates.

## C.     BOP's Response to the COVID-19 Pandemic.

Throughout the pandemic, the Bureau of Prisons, following guidance from the CDC and other expert agencies, has acted aggressively to mitigate the spread of COVID-19 and to treat those who are afflicted. These efforts, in an unprecedented crisis, have paid dividends, with many institutions often going months without any positive case, and the overall death rate of inmates from the virus throughout the pandemic being less than or equivalent to that seen in the general population. These results are impressive given the challenges presented in a prison environment. Fortunately, the early confidence expressed by the Third Circuit proved accurate. *See United States v. Raia*, 954 F.3d 594,

- 4 -

597 (3d Cir. 2020) ("the mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release, especially considering BOP's statutory role, and its extensive and professional efforts to curtail the virus's spread.").

BOP has offered a vaccine to every inmate and staff member, which of course has contributed greatly in reducing harm from the virus. Further, BOP continues to employ proven infection prevention procedures and modifications to inmate programming and services commensurate to the conditions at each facility. It assigns an operation level (Level 1 ("minimal modifications"), Level 2 ("moderate modifications"), and Level 3 ("intense modifications")) based on the institution's COVID-19 medical isolation rate, the combined percentage of staff and inmate completed vaccinations series, and the transmission rate in the surrounding county. This assessment is reviewed daily. A great deal of specific information regarding the criteria for each operation level, and the mitigation measures employed at each level, is presented at

https://www.bop.gov/coronavirus/covid19_modified_operations_guide.jsp.

In addition, acting under the authority granted in the CARES Act, BOP has transferred many thousands of inmates to home confinement, focusing on nonviolent offenders who have served the majority of their sentences.[1] This initiative, combined

---

[1] This Court does not have authority to grant a transfer to home confinement, or review BOP's administrative decision regarding that issue. *See* 18 U.S.C. § 3621(b) (BOP's designation decision is not subject to judicial review); *see also, e.g.*, *United States v. Aguibi*, 858 F. App'x 485, 486 n.2 (3d Cir. 2021) (not precedential; per curiam) ("To the extent that Aguibi requested a transition to home confinement, the Bureau of Prisons has the sole authority to place a prisoner in home confinement."); *United States v.*

with the reduced number of new arrivals during the pandemic and the ordinary release of

prisoners upon completion of their sentences, has led to a dramatic decrease in the total

BOP population, which in turn has increased opportunities for social distancing and

reduced the strain on BOP resources. The total BOP population is now more than 10%

less than it was at the outset of the pandemic, standing at the lowest level in decades.

The defendant is held at FCI Berlin, which is presently at Level 2 (moderate

modifications). That institution houses 839 inmates. At present, there are no inmates

there who are reported positive. There are 448 current inmates who previously tested

positive and have recovered. There has been no COVID-related death at this institution.

The latest statistics are available at www.bop.gov/coronavirus.

## II.    Discussion.

### A.    Governing Law.

The compassionate release statute, 18 U.S.C. § 3582(c)(1)(A), as amended by the

First Step Act on December 21, 2018, provides in pertinent part:

(c) Modification of an Imposed Term of Imprisonment.—The court may not
modify a term of imprisonment once it has been imposed except that—

(1) in any case—

---

*Saunders*, 986 F.3d 1076, 1078 (7th Cir. 2021); *United States v. Houck*, 2 F.4th 1082,
1085 (8th Cir. 2021); *United States v. Gray*, 2020 WL 6822949, at *2 (E.D. Pa. Nov. 20,
2020) (Sanchez, C.J.); *United States v. Rodriguez-Collazo*, 2020 WL 2126756, at *2-3
(E.D. Pa. May 4, 2020) (Younge, J.); *United States v. Pettiway*, 2020 WL 3469043, at *2
(E.D. Pa. June 25, 2020) (Bartle, J.); *United States v. Torres*, 2020 WL 3498156, at *5-6
(E.D. Pa. June 29, 2020) (Kearney, J.); *United States v. Mabe*, 2020 U.S. Dist. LEXIS
66269, at *1 (E.D. Tenn. Apr. 15, 2020) ("the CARES Act places decision making
authority solely within the discretion of the Attorney General and the Director of the
Bureau of Prisons. . . . This Court therefore does not have power to grant relief under
Section 12003 of the CARES Act.").

(A)  the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—

(i)  extraordinary and compelling reasons warrant such a reduction . . .

and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission . . . .

Further, 28 U.S.C. § 994(t) provides: "The Commission, in promulgating general policy statements regarding the sentencing modification provisions in section 3582(c)(1)(A) of title 18, shall describe what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples. Rehabilitation of the defendant alone shall not be considered an extraordinary and compelling reason."[2]

The Sentencing Guidelines policy statement appears at § 1B1.13, and provides that the Court may grant release if "extraordinary and compelling circumstances" exist, "after considering the factors set forth in 18 U.S.C. § 3553(a), to the extent that they are

---

[2]  The inmate does not have a right to a hearing. Rule 43(b)(4) of the Federal Rules of Criminal Procedure states that a defendant need not be present where "[t]he proceeding involves the correction or reduction of sentence under Rule 35 or 18 U.S.C. § 3582(c)." *See Dillon v. United States,* 560 U.S. 817, 827-28 (2010) (observing that, under Rule 43(b)(4), a defendant need not be present at a proceeding under 18 U.S.C. § 3582(c)(2)).

applicable," and the Court determines that "the defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)."

This policy statement is not currently binding, as it refers to motions filed by the Director of BOP and has not been updated since passage of the First Step Act of 2018, which afforded authority for defendants to directly file motions. *United States v. Andrews*, 12 F.4th 255, 260 (3d Cir. 2021). However, courts routinely continue to look to the definitions provided by the Sentencing Commission for guidance. The Third Circuit explained:

> [A]lthough the policy statement is no longer binding, it still sheds light on the meaning of extraordinary and compelling reasons. "It is a commonplace of statutory interpretation that 'Congress legislates against the backdrop of existing law.'" *Parker Drilling Mgmt. Servs., Ltd. v. Newton*, 139 S. Ct. 1881, 1890 (2019) (*quoting McQuiggin v. Perkins*, 569 U.S. 383, 398 n.3 (2013)). Because Congress reenacted the compassionate-release statute without any alterations to the phrase "extraordinary and compelling reasons," it was reasonable for the court to conclude that the phrase largely retained the meaning it had under the previous version of the statute.

*Andrews*, 12 F.4th at 260. *See also United States v. Jefferson*, 2021 WL 4279626, at *2 (3d Cir. Sept. 21, 2021) (not precedential) ("we also explained in *Andrews* that it is not error for a district court to consider the policy statement in its 'extraordinary and compelling' analysis, even if the policy statement is not ultimately binding on the court.").

This approach is particularly appropriate where, as here, the motion rests on medical grounds, and the Commission has stated a well-accepted definition of the circumstances that qualify as extraordinary. *See United States v. High*, 997 F.3d 181, 186 (4th Cir. 2021) (while the Fourth Circuit also holds that "§ 1B1.13 is not applicable to

*defendant-filed* motions under § 3582(c)," the court recognizes that "it defines, in the medical context, the same substantive term that applies to *BOP-filed* motions. One might reasonably believe therefore that the term 'extraordinary and compelling reasons' will be defined the same for *defendant-filed* motions.").

In application note 1 to the policy statement, the Commission defines the "extraordinary and compelling reasons" that may justify compassionate release as follows:

> 1. Extraordinary and Compelling Reasons.—Provided the defendant meets the requirements of subdivision (2) [regarding absence of danger to the community], extraordinary and compelling reasons exist under any of the circumstances set forth below:
>
> (A)   Medical Condition of the Defendant.—
>
> > (i)   The defendant is suffering from a terminal illness (i.e., a serious and advanced illness with an end of life trajectory). A specific prognosis of life expectancy (i.e., a probability of death within a specific time period) is not required. Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia.
> >
> > (ii)   The defendant is—
> >
> > > (I)    suffering from a serious physical or medical condition,
> > >
> > > (II)   suffering from a serious functional or cognitive impairment, or
> > >
> > > (III)  experiencing deteriorating physical or mental health because of the aging process,
> >
> > that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

(B)     Age of the Defendant.—The defendant (i) is at least 65 years old; (ii) is experiencing a serious deterioration in physical or mental health because of the aging process; and (iii) has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less.

(C)     Family Circumstances.—

    (i)     The death or incapacitation of the caregiver of the defendant's minor child or minor children.

    (ii)     The incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner.

(D)     Other Reasons.—As determined by the Director of the Bureau of Prisons, there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C).

In general, the defendant has the burden to show circumstances meeting the test for compassionate release. *See, e.g.*, *United States v. Hampton*, 985 F.3d 530, 533 (6th Cir. 2021); *United States v. Newton*, 996 F.3d 485, 488 (7th Cir. 2021); *United States v. Neal*, 2020 WL 5993290, at *4 (E.D. Pa. Oct. 9, 2020) (Gallagher, J.); *United States v. Adeyemi*, 2020 WL 3642478, at *16 (E.D. Pa. July 6, 2020) (Kearney, J.). As the terminology in the statute makes clear, compassionate release is "rare" and "extraordinary." *United States v. Willis*, 382 F. Supp. 3d 1185, 1188 (D.N.M. 2019) (Johnson, J.) (citations omitted).[3]

---

[3]  The statute provides that rehabilitation alone is not a basis for compassionate release. 28 U.S.C. § 994(t). *See United States v. Claudio*, 2022 WL 1623650, at *3 (E.D. Pa. May 23, 2022) (Kearney, J.) ("[The defendant's rehabilitation does not constitute an extraordinary and compelling reason for release. We commend [him] for his efforts towards rehabilitation. But we are not a parole board reducing sentences simply for good behavior while incarcerated; we must also find extraordinary and compelling reasons for release.").

**B.      COVID-19 and Compassionate Release.**

The fact of the COVID-19 pandemic, which poses a general threat to every non-immune person in the country, does not alone provide a basis for a sentence reduction. The guideline policy statement describes specific serious medical conditions afflicting an individual inmate, not generalized threats to the entire population. The Third Circuit therefore held the mere existence of COVID-19 does not support compassionate release. *United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020); *see United States v. Roeder*, 807 F. App'x 157, 161 n.16 (3d Cir. 2020) (per curiam) (not precedential) ("[T]he existence of some health risk to every federal prisoner as the result of this global pandemic does not, without more, provide the sole basis for granting release to each and every prisoner within our Circuit.").

Prior to the availability of effective vaccines, the government acknowledged that an inmate who presented a risk factor identified by the CDC as increasing the risk of an adverse outcome from COVID-19, and who was not expected to recover from that condition during the period of risk from COVID-19, presented "a serious physical or medical condition . . . that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility" U.S.S.G. § 1B1.13 cmt. n.1(A)(ii)(I), as, due to his condition, the defendant may be less able to protect himself against an unfavorable outcome from the disease. *See United States v. Tartaglione*, 2020 WL 3969778, at *5-6 (E.D. Pa. July 14, 2020) (Slomsky, J.) ("a prisoner seeking release due to COVID-19 must at least show: (1) a sufficiently serious medical condition, or advanced age, placing the prisoner at a uniquely high risk of grave illness or death if

infected by COVID-19; and (2) an actual, non-speculative risk of exposure to COVID-19 in the facility where the prisoner is held" (quoting *United States v. Somerville*, 463 F. Supp. 3d 585, 597 (W.D. Pa. 2020) (Ranjan, J.)).

That position changed once vaccines became available. The government now maintains, with virtually unanimous judicial approval, that compassionate release based on the threat of COVID-19 is not available to an inmate to whom a vaccine has been offered, absent evidence of other health risks or unique vulnerability of a particular inmate.

### C.      Release Is Not Warranted Based on the Threat of COVID-19.

Here, the defendant is not eligible for compassionate release because he has not identified any condition that he currently has that is on the CDC's list of risk factors. He presents high blood pressure, but has not been diagnosed with hypertension. And he is a young man of 29 in generally good health.

The motion should therefore be denied. *See, e.g.*, *United States v. Williams*, 2020 WL 4001045, at *2 (E.D. Pa. July 14, 2020) (Bartle, J.) (denied for inmate who presents no health conditions); *United States v. Cato*, 2020 WL 4193055, at *2 (E.D. Pa. July 21, 2020) (Beetlestone, J.) (same); *United States v. Moore*, 2020 WL 4193012, at *1 (E.D. Pa. July 21, 2020) (Pappert, J.) (same); *United States v. Ramirez-Ortega*, 2020 WL 4805356, at *2 (E.D. Pa. Aug. 18, 2020) (DuBois, J.) (same); *United States v. Coles*, 2020 WL 1899562 (E.D. Mich. Apr. 17, 2020) (Drain, J.) (denied for 28-year-old inmate at institution with outbreak); *United States v. Haney*, 454 F. Supp. 3d 316 (S.D.N.Y. Apr. 13, 2020) (Rakoff, J.) (denied for 61-year-old with no other conditions). And in any

event, the defendant does not present an "extraordinary and compelling reason" allowing

consideration for compassionate release because he has been vaccinated.

The CDC states that the vaccines are "effective," and "[g]etting vaccinated

prevents severe illness, hospitalizations, and death."

https://www.cdc.gov/aging/covid19/covid19-older-adults.html (accessed May 21, 2022).

Accordingly, once a vaccine is available to an inmate, compassionate release is not

warranted based on the threat of COVID-19 alone. *See United States v. Reed*, 2021 WL

2681498, at *4 (E.D. Pa. June 30, 2021) (Schmehl, J.) ("Now that COVID-19

vaccinations are being administered throughout the Bureau of Prisons, compassionate

release motions [based on COVID-19] generally lack merit."). As the Sixth Circuit held:

> [A] defendant's incarceration during the COVID-19 pandemic—when the
> defendant has access to the COVID-19 vaccine—does not present an
> 'extraordinary and compelling reason' warranting a sentence reduction. . . . After
> all, with access to the vaccine, an inmate largely faces the same risk from COVID-
> 19 as those who are not incarcerated. To be sure, inmates in some respects face
> social distancing challenges distinct from those of the general public (although
> perhaps not entirely unlike students in dorm rooms, individuals in medical and
> assisted care facilities, and even residents of densely occupied apartment
> complexes). But to the extent prisons do offer some unique challenges, the vaccine
> now significantly reduces the risks associated with COVID-19. And at this
> intersection of law and science, we find wisdom in Judge Easterbrook's
> assessment that 'for people living in close quarters, vaccines offer relief far more
> effective than a judicial order.'"

*United States v. Lemons*, 15 F.4th 747, 751 (6th Cir. 2021) (quoting *United States v.*

*Broadfield*, 5 F.4th 801, 803 (7th Cir. 2021)).

The Third Circuit has stated agreement with this view. In *Garrett v. Murphy*, 17

F.4th 419 (3d Cir. 2021), the Court addressed a lawsuit by a state prisoner asserting, in

part, that authorities kept him "in pretrial detention with deliberate indifference to his

- 13 -

imminent risk of contracting COVID-19 and suffering severe physical injury, in violation
of his substantive due process rights." *Id.* at 424. The Court declined permission for the
inmate to proceed in forma pauperis, based on his previous unsuccessful litigation and the
three-strikes rule of 28 U.S.C. § 1915(g). The Court further considered whether the
plaintiff fell within the exception allowing a claim by an inmate "under imminent danger
of serious physical injury." 28 U.S.C. § 1915(g). The Court held the inmate had not made
this showing. It first observed that the inmate already had COVID-19 in December 2020,
and stated, "Protected by natural immunity, Garrett has not shown that continued
exposure to COVID-19 still puts him at imminent risk of serious physical injury." *Id.* at
433. The Court added:

> We also take judicial notice that, to the extent Garrett believes that he remains at
> serious risk of physical injury or death, effective COVID-19 vaccines are widely
> available, and Garrett has not shown he lacks proper access to the vaccine. *Cf.*
> *United States v. Burgard*, 857 F. App'x 254, 255 (7th Cir. 2021) ("widespread
> availability of the COVID-19 vaccine . . . eliminates" need for compassionate
> release).

*Garrett*, 17 F.4th at 433.

Courts routinely deny relief to an inmate who has been vaccinated. *See United*
*States v. Williams*, 2021 WL 4860170, at *3 (N.D. Ind. Oct. 19, 2021) (DeGuilio, C.J.)
("An overwhelming amount of district courts across the country have held that being
fully vaccinated drastically reduces the risk of becoming severely ill and therefore denied
compassionate release."). Multiple panels of the Third Circuit have approved this result.
*See, e.g.*, *United States v. Doan*, 2022 WL 1551830 (3d Cir. May 17, 2022) (not
precedential) (though the defendant presented a variety of health conditions, "[t]he

District Court properly noted that, at the time of its decision, infection rates were near zero at FCI-Fairton, and that Doan is at a lower risk of reinfection now that he and the majority of the inmate population at FCI-Fairton are vaccinated"; in that circumstance, the defendant did not make a threshold showing of "extraordinary and compelling reasons," and the Court summarily affirms the denial of compassionate release); *United States v. Thomas*, 2022 WL 296594, at *2 (3d Cir. Feb. 1, 2022) ("The District Court appropriately recognized that Thomas's vaccination reduced the health risks he relied on in support of his motion."); *see also United States v. Hannigan*, 2022 WL 815449, at *15 (E.D. Pa. Mar. 17, 2022) (Kenney, J.) ("Even in the era of the highly transmissible omicron variant, Moderna vaccination and booster shot is highly effective against severe illness. District Courts in the Third Circuit consistently agree that an FDA-approved vaccination against COVID-19 lessens the risk of serious illness or death from COVID-19 such that the threat of the pandemic, even combined with pre-existing medical conditions, does not constitute an extraordinary and compelling reason for compassionate release.") (citing cases); *United States v. Holmes*, 2022 WL 1082008, at *2 (E.D. Pa. Apr. 11, 2022) (Bartle, J.) ("Now that he is vaccinated, Holmes has failed to show that he is at any greater threat of contracting COVID-19 in his current situation than the general public."). Therefore, compassionate release is not warranted here based on the existence of COVID-19.

### D.     Reconsideration of the Sentence Is Not Appropriate.

Kavaja also essentially asks the Court to reconsider his sentence. He claims that he is rehabilitated, that he wishes to assist family members, and that he can save American

taxpayers the cost of his incarceration. But this Court has already considered the 3553(a) factors and determined the appropriate sentence. There is no authority for the Court to reassess the sentence now, absent presentation of an "extraordinary and compelling reason," that does not appear here.

Kavaja claims that the in *Concepcion v. United States*, 142 S. Ct. 2389 (2022), allows a reduction of his sentence. It does not.

*Concepcion* does not concern the compassionate release statute. It instead addresses sentence modification proceedings under Section 404 of the First Step Act of 2018, which made retroactive the changes to crack cocaine sentencing in the Fair Sentencing Act of 2010. *Concepcion* holds that where a defendant is eligible for consideration for a lower sentence under Section 404, the court in resolving the matter may consider information apart from the change in the sentencing calculation, including "evidence of rehabilitation, disciplinary infractions, or unrelated Guidelines changes." *Concepcion*, 142 S. Ct. at 2401. The Court explained that, where Congress does not place a limitation on information that may be considered at sentencing, there is no applicable limit, in light of the "longstanding tradition in American law, dating back to the dawn of the Republic, that a judge at sentencing considers the whole person before him or her 'as an individual.'" *Id.* at 2395 (quoting *Koon v. United States*, 518 U.S. 81, 113 (1996)).

The same approach surely applies once a court determines that a defendant presents an "extraordinary and compelling reason" allowing consideration for compassionate release under Section 3582(c)(1)(A)(i). Once that threshold is passed, the court has discretion in determining whether to reduce a sentence and by how much, and

in making that determination, certainly may consider any information about the

defendant's circumstances. The government has never asserted otherwise in this district,

and the Third Circuit confirmed this principle. In *United States v. Andrews*, 12 F.4th 255

(3d Cir. 2021), it held that the length of a sentence that was lawful when imposed does

not provide a basis for consideration for compassionate release, even where the sentence

would be lower under current law. The Court then stated:

> But in holding that the statutorily required sentence or Congress's nonretroactive
> sentencing reductions are not extraordinary and compelling reasons for purposes
> of § 3582(c)(1)(A), we are not saying that they are always irrelevant to the
> sentence-reduction inquiry. If a prisoner successfully shows extraordinary and
> compelling circumstances, the current sentencing landscape may be a legitimate
> consideration for courts at the next step of the analysis when they weigh the
> § 3553(a) factors.

*Andrews*, 12 F.4th at 262.

It is apparent that first, the threshold showing of an "extraordinary and compelling

reason" must be established. A court cannot grant compassionate release at any time and

for any reason, upon simply electing to reconsider a sentence in light of current

circumstances. As *Andrews* reflects, and as *Concepcion* confirms, 142 S. Ct. at 2400-01,

it is Congress that controls definition of the grounds on which a final sentence may be

reduced, and the limit placed by Congress on the exceptional remedy of compassionate

release must be respected. "It is important to understand that the compassionate release

provisions are not a license for judges to act as one-person parole boards, or for new

judges to resentence offenders based on their views of appropriate sentences. Rather, the

compassionate release provisions require first and foremost a showing of an

extraordinary and compelling reason for compassionate release." *United States v. Campbell*, 2021 WL 248593, at *8 (N.D. Iowa Jan. 25, 2021) (Williams, J.).

In *Concepcion*, eligibility for consideration of a reduced sentence turned on meeting the requirements of Section 404 of the First Step Act. That provision allows a person convicted of a "covered offense," that is, a crack cocaine offense for which the statutory penalties were modified by sections 2 and 3 of the Fair Sentencing Act, to seek imposition of "a reduced sentence as if sections 2 and 3 of the Fair Sentencing Act of 2010 . . . were in effect at the time the covered offense was committed." 132 Stat. 5222. In *Concepcion*, the defendant's eligibility for consideration under this provision was not disputed. *Concepcion*, 142 S. Ct. at 2397 ("The Government conceded Concepcion's eligibility for relief and his calculation of the Guidelines but opposed the motion, emphasizing that Concepcion's original sentence of 228 months fell within the new Guidelines range of 188 to 235 months."). The Supreme Court therefore exclusively focused on the rules applicable to the next stage of the inquiry, that is, determining what a court may consider when exercising its discretion to determine whether and by how much to reduce the sentence. *See also Dillon v. United States*, 560 U.S. 817, 827 (2010) (explaining the identical two-step process involved in addressing motions for a sentence reduction based on a retroactive guideline amendment, under 18 U.S.C. § 3582(c)(2)).

A compassionate release motion triggers a similar two-step process, in which the court must first determine eligibility, and then if the defendant is eligible for consideration proceed to the next step, which is a discretionary assessment of all 3553(a) factors. Here, Kavaja's presentation does not get past the first step.

The Seventh Circuit has confirmed this analysis, in a thorough opinion by Judge Easterbrook. In *United States v. King*, 40 F.4th 594 (7th Cir. 2022), the court endorsed the government's view presented here and rejected the notion that *Concepcion* now allows consideration of a change in sentencing law as a basis for compassionate release. The court confirmed that "*Concepcion* is irrelevant to the threshold question whether any given prisoner has established an 'extraordinary and compelling' reason for release." *Id.* at *596

Thus, the mandate remains that a defendant must first present an "extraordinary and compelling reason" to gain consideration for compassionate release. And because Kavaja presents no such qualifying factor, there is no basis to proceed and further consider the 3553(a) factors. To be sure, if Kavaja did present some other circumstance that did allow consideration for compassionate release (for instance, a severe medical problem limiting his ability to function in a prison environment) then at the next stage, the Court would consider all pertinent information about the defendant, consistent with both *Concepcion* and *Andrews*. But as explained above, Kavaja makes no such presentation, and therefore his motion should be denied by this Court.

E.    **Conclusion.**

Kavaja should serve the sentence imposed by the Court. He is 29 years old and was 26 years old at the time of the offense. At the time of the offense, he had suffered from migraines for several years which did not impede his ability to commit a serious drug offense. The defendant has served only half of his sentence of 88 months for conspiracy to possess with intent to distribute over five kilograms of cocaine. This

conviction was the result of the defendant's participation in a scheme to smuggle nearly 20 tons of cocaine onboard the MSC Gayane and distribute it to drug traffickers in Europe. Law enforcement's seizure of the approximately 17,000 kilograms of cocaine from the MSC Gayane on June 17, 2019, was the largest seizure of cocaine by the U.S. Customs and Border Protection in its 230-year history. This conduct took place just three years ago. The defendant fails to demonstrate how release, 44 months into an 88-month sentence for a serious drug crime, reflects the seriousness of the offense, promotes respect for the law, and provides just punishment for the offense. *See* 18 U.S.C. § 3553(a)(2)(A). And he presents no basis for consideration of the exceptional remedy of early release. The motion for compassionate release should be denied.

Respectfully yours,

JACQUELINE C. ROMERO
United States Attorney


*/s Robert A. Zauzmer*
ROBERT A. ZAUZMER
Assistant United States Attorney
Chief of Appeals


*/s Alexandra M. Lastowski*
ALEXANDRA M. LASTOWSKI
Assistant United States Attorney

## CERTIFICATE OF SERVICE

I hereby certify that a copy of this pleading has been served by first-class mail,

postage prepaid, upon:

Mr. Aleksander Kavaja
Reg. No. 69914-066
Federal Correctional Institution
P.O. Box 9000
Berlin, NH 03570


*/s Alexandra M. Lastowski*
ALEXANDRA M. LASTOWSKI
Assistant United States Attorney


Dated:  August 19, 2022.